Filed:  July 30, 2010

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 09-1615
(3:09-cv-00044-JRS)

———————————

MARK J. MCBURNEY; ROGER W. HURLBERT; BONNIE STEWART, Professor,

              Plaintiffs - Appellants,

     v.

KENNETH T. CUCCINELLI, II, Attorney General, Commonwealth of Virginia; NATHANIEL L. YOUNG, Deputy Commissioner and Director, Division of Child Support Enforcement, Commonwealth of Virginia; THOMAS C. LITTLE, Acting Director of the Real Estate Assessment Division, Henrico County, Commonwealth of Virginia,

              Defendants - Appellees.

———————————

O R D E R

———————————

The court amends its opinion filed July 27, 2010, as follows:

On page 10, lines 10 and 11 –- the comma after the word "whether" and the words "pursuant to" are deleted.

On page 17, line 2 of text – the name "McBurney" is replaced with the name "Hurlbert."

For the Court – By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

MARK J. MCBURNEY; ROGER W.
HURLBERT; BONNIE
STEWART, Professor,

*Plaintiffs-Appellants,*

v.

KENNETH T. CUCCINELLI, II,
Attorney General, Commonwealth
of Virginia; NATHANIEL L. YOUNG,
Deputy Commissioner and
Director, Division of Child
Support Enforcement,
Commonwealth of Virginia;
THOMAS C. LITTLE, Acting Director
of the Real Estate Assessment
Division, Henrico County,
Commonwealth of Virginia,

*Defendants-Appellees.*

No. 09-1615

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, Chief District Judge.
(3:09-cv-00044-JRS)

Argued: March 23, 2010

Decided: July 27, 2010

Before GREGORY and AGEE, Circuit Judges, and
Eugene E. SILER, Jr., Senior United States Circuit Judge
for the Sixth Circuit, sitting by designation.

Affirmed in part, reversed in part, and remanded by published opinion. Judge Siler wrote the opinion, in which Judge Gregory concurred. Judge Gregory wrote a separate concurring opinion. Judge Agee wrote a separate opinion concurring in part and dissenting in part.

---

## COUNSEL

**ARGUED**: Leah Marie Nicholls, INSTITUTE FOR PUBLIC REPRESENTATION, Washington, D.C., for Appellants. Stephen R. McCullough, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, Benjamin Adelbert Thorp, IV, OFFICE OF THE COUNTY ATTORNEY, Henrico County, Henrico, Virginia, for Appellees. **ON BRIEF:** Stephen W. Bricker, BRICKER LAW FIRM, P.C., Richmond, Virginia; Brian Wolfman, INSTITUTE FOR PUBLIC REPRESENTATION, Georgetown University Law Center, Washington, D.C., for Appellants. Craig M. Burshem, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia; Joseph P. Rapisarda, County Attorney, Karen M. Adams, Senior Assistant County Attorney, OFFICE OF THE COUNTY ATTORNEY, Henrico County, Henrico, Virginia, for Appellees.

---

## OPINION

SILER, Senior Circuit Judge:

Mark J. McBurney, Roger W. Hurlbert, and Bonnie Stewart (collectively, the "Appellants") appeal the district court's dismissal of their 42 U.S.C. § 1983 action seeking declaratory and injunctive relief against the Attorney General of Virginia,

the Deputy Commissioner and Director of Virginia's Division of Child Support Enforcement ("DCSE"), and the Director of the Real Estate Assessment Division in Henrico County, Virginia (collectively, the "Appellees"). Before the district court, the plaintiffs alleged that Virginia's Freedom of Information Act ("VFOIA" or "the Act") violates the dormant commerce clause and the Privileges and Immunity Clause of the U.S. Constitution. The district court dismissed all parties from the suit on jurisdictional grounds, from which order this appeal arises.

For the following reasons, we **AFFIRM** in part, **REVERSE** in part, and **REMAND**.

I.

The VFOIA provides citizens of the Commonwealth of Virginia with a right of access to all public records held by the Commonwealth, its officers, employees, or agents. Va. Code Ann. §§ 2.2-3700 to .2-3714. In relevant part, the Act provides as follows:

> Except as otherwise specifically provided by law, all public records shall be open to inspection and copying by any citizens of the Commonwealth during the regular office hours of the custodian of such records. Access to such records shall not be denied to citizens of the Commonwealth, representatives of newspapers and magazines with circulation in the Commonwealth, and representatives of radio and television stations broadcasting in or into the Commonwealth. The custodian may require the requester to provide his name and legal address. The custodian of such records shall take all necessary precautions for their preservation and safekeeping.

§ 2.2-3704(A).

On January 21, 2009, McBurney and Hurlbert sued the Attorney General of Virginia, currently Kenneth T. Cuccinelli, II (the "Attorney General"), [1] Nathaniel L. Young, Deputy Commissioner and Director of Virginia's DCSE (the "Deputy Commissioner"), and the Director of the Real Estate Assessment Division in Henrico County, Virginia, currently Thomas C. Little (the "County Director"), [2] pursuant to 42 U.S.C. § 1983. They sought declaratory and injunctive relief from the enforcement of the VFOIA, which they claim violates the Privileges and Immunities Clause and the dormant commerce clause of the U.S. Constitution. The district court later allowed the plaintiffs to amend their complaint to add an additional plaintiff, Bonnie Stewart.

## A. Plaintiffs' Claims

Each plaintiff alleges different facts to support the common argument that the VFOIA violates the U.S. Constitution.

### 1. McBurney's Claims

McBurney, a citizen of Rhode Island, and his wife Lore Mills were divorced in 2002. McBurney filed an application for child support with Virginia's DCSE in July 2006; and, as a result of DCSE's alleged failure to file the proper petition, McBurney claims he was denied "nearly nine months of child support payments."

---

[1] The complaint named Robert Francis McDonnell, Attorney General at the time of filing. Pursuant to Federal Rule of Civil Procedure 25(d), McDonnell's successor William Cleveland Mims was automatically substituted before the district court. After oral arguments in this case, the Appellees substituted the present named Appellee. For clarity, this opinion will refer to individual Appellees by their office titles.

[2] The complaint named Samuel A. Davis, Director at the time of filing. Prior to oral arguments in this case, the Appellees substituted the current County Director for Davis. *See* Fed. R. Civ. P. 25(d).

In 2008, McBurney submitted a VFOIA request to the DCSE seeking disclosure of certain documents that he believed would help resolve this dispute. Specifically he requested "all emails, notes, files, memos, reports, policies, [and] opinions" pertaining to him, his son, or his former wife. The DCSE denied his request on two grounds: first, because the information "[was] confidential and protected under the Virginia Code[,] [§§] 63.2-102 and 63.2-103"; and second, because he was "not a Citizen of [the] Commonwealth of Virginia." McBurney sent a second request, identical to the first except that he listed a Virginia address instead of his Rhode Island address. The DCSE again denied his request. This time, the DCSE only listed McBurney's out-of-state citizenship as its reason for the denial. However, the DCSE did inform McBurney of his right to obtain this information under a different statute, the Government Data Collection and Dissemination Practices Act, Va. Code Ann. §§ 2.2-3800 to .2-3809. Later, McBurney submitted a request under this act and obtained over eighty requested documents.

McBurney contends that he did not receive all the documents he could have received under the VFOIA. He also contends that the DCSE's denial obstructed his right to advocate on his own behalf and prohibited him from utilizing Virginia's dispute resolution procedures, thus violating the Privileges and Immunities Clause.

### 2. Hurlbert's Claims

Hurlbert, a citizen of California, is the sole proprietor of Sage Information Services. He is in the business of requesting real estate tax assessment records for his clients from state agencies across the United States, including Virginia. On June 5, 2008, Hurlbert submitted a VFOIA request to Henrico County Assessor's Office, which the office denied on the basis of his citizenship. On February 17, 2009, after litigation in this case had commenced, the County provided Hurlbert with an electronic copy of its 2008 real estate assessment

database—the subject of the 2008 VFOIA request. Hurlbert's counsel returned this information without reading or reviewing it.

Hurlbert argues that the denial of his VFOIA request was unconstitutional, because it prevents him from pursuing his common calling on an equal basis with Virginia citizens in violation of the Privileges and Immunities Clause, and because it gives Virginia citizens an exclusive right of access to Virginia's public records, in contravention of the dormant commerce clause.

### 3. Stewart's Claims

Stewart, a citizen of West Virginia and Assistant Professor of Journalism at West Virginia University, submitted her VFOIA request in February 2009 to Virginia Commonwealth University and Virginia Polytechnic Institute and State University ("Virginia Tech"). Stewart's request sought information about the salaries and benefit packages awarded to the presidents of Virginia's public universities and was made in conjunction with a course project on the administration of public universities in other states. Both institutions denied her request, because she was not a citizen of Virginia. [3]

Stewart claims that the denial of her VFOIA request violates the Privileges and Immunities Clause because it prevents her from pursuing her common calling as an educator on an equal basis with Virginia citizens.

### B. District Court's Opinion

The district court granted the defendants' motions to dis-

---

[3] Virginia Tech first claimed that its president operated without a contract, but later stated that the university did not possess any responsive records or, even if it did, it would not release them to her due to her out-of-state citizenship status.

miss. First, it held that the Attorney General was not a proper party under the Eleventh Amendment. Because Stewart only alleged claims against the Attorney General, it correspondingly dismissed her as a plaintiff. Second, it held that both McBurney and Hurlbert lacked standing, and dismissed them as plaintiffs. Because McBurney was the only plaintiff to assert claims against the Deputy Commissioner, the district court also dismissed the Deputy Commissioner as a party. Similarly, because only Hurlbert had sued the County Director, the court dismissed him as well. Consequently, no parties remained before the court, and it dismissed the case.

## II.

"[W]e review de novo a district court's legal determination of whether *Ex parte Young* relief is available." *Franks v. Ross*, 313 F.3d 184, 192-93 (4th Cir. 2002) (internal quotation marks and alterations omitted). Similarly, "[w]e review a district court's dismissal for lack of standing de novo." *Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009) (citations omitted).

## III.

This case presents two threshold questions: first, whether the Attorney General is immune from suit under the Eleventh Amendment; and second, whether the plaintiffs have standing to sue. As to the first question, we agree with the district court that the Attorney General was not a proper party. We disagree, however, with the district court's ruling on standing, so we reverse that part of its judgment, and remand for proceedings consistent with this opinion.

### A. Sovereign Immunity

The district court concluded that the Attorney General was not a proper party to the suit under the Eleventh Amendment and the exception announced in *Ex parte Young*. The Appel-

lants appeal this ruling and the district court's consequent dismissal of Stewart.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

The present suit is thus barred unless it falls within the exception announced by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908), which permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not a suit against the state for purposes of the Eleventh Amendment. *Id.* at 159-60. "The requirement that the violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 330 (4th Cir. 2001) (citation omitted). The *Ex parte Young* exception is directed at "officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, *and* who threaten and are about to commence proceedings . . . to enforce against parties affected [by] an unconstitutional act." *Ex parte Young*, 209 U.S. at 155-56 (emphasis added). Thus, we must find a "special relation" between the officer being sued and the challenged statute before invoking the exception. *Id.* at 157; *Gilmore*, 252 F.3d at 331. This requirement of "*proximity to* and *responsibility for* the challenged state action," *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008), is not met when an official merely possesses "[g]eneral authority to enforce the laws of the state," *id.* at 331 (citation omitted). The special-relation requirement protects a state's Eleventh Amendment immunity while, at the same time, ensuring that, in the event a plaintiff sues a state official in his individual capacity to enjoin uncon-

stitutional action, "[any] federal injunction will be effective with respect to the underlying claim." *Id.* at 333.

In dismissing the Attorney General because he lacked a "specific relation" to the VFOIA, the district court took judicial notice of the Attorney General's Web site, which states that the Attorney General's duties include, in pertinent part, "providing legal advice and representation to the Governor and executive agencies, state boards and commissions, and institutions of higher education; defending the constitutionality of state laws when they are challenged in court; and enforcing state laws that protect businesses and consumers." The Appellants now contend that the "special relation" requirement is met, because (1) the Attorney General has a specific statutory duty to enforce the VFOIA against state officials; and (2) even if he does not, his authority to issue official opinions and advice creates the requisite enforcement connection. In response, the Attorney General disputes the Appellants' interpretation of the VFOIA's enforcement provision, and posits that his general authority to issue advisory opinions is not sufficient to abrogate sovereign immunity under the Eleventh Amendment.

We agree with the Attorney General. First, he does not have a specific statutory duty to enforce the VFOIA against state officials. Although the VFOIA contains an enforcement provision that grants "the attorney for the Commonwealth" authority to petition for an injunction against a state official for a violation of the Act, [4] Va. Code Ann. § 2.2-3713(A), as used throughout the Code, the term "attorney for the Commonwealth," *id.*, refers not to the Attorney General, but rather

---

[4] The provision provides, in pertinent part:

> Any person, including the attorney for the Commonwealth acting in his official or individual capacity, denied the rights and privileges conferred by this chapter may . . . enforce such rights and privileges by filing a petition for mandamus or injunction[.]

Va. Code Ann. § 2.2-3713(A).

to the Commonwealth's Attorneys, who are elected local prosecutors. *Compare* Va. Code Ann. § 2.2-500 (stating that the Attorney General is the "chief executive officer of the Department of Law") *with* §§ 15.2-1626, 1627 (providing that "every county and city shall elect an attorney for the Commonwealth," and setting forth the office's local prosecutorial duties). *See also* Va. Code Ann. § 2.2-511 (distinguishing between the duties of the Attorney General and the "attorney for the Commonwealth"). *See generally In re Hannett*, 619 S.E.2d 465 (Va. 2005) (addressing the question of whether Va. Code Ann. § 19.2-156 provides for the appointment of a local attorney to serve as the "attorney for the Commonwealth" due to the prolonged absence of the elected "Commonwealth's Attorney"). Thus, contrary to the Appellants' characterization, the Attorney General does not possess a specific statutory duty to enjoin violations of the Act pursuant to § 2.2-3713(A).

Second, the Attorney General's duty to issue advisory opinions is, like the Governor's duty to uphold the state laws in *Gilmore*, "not sufficient to make [him] the proper part[y] to litigation challenging the law." *Gilmore*, 252 F.3d at 331 (internal quotation marks and citation omitted). Our decision in *Limehouse* does not change this result. In *Limehouse,* the plaintiffs sought to enjoin the Director of South Carolina's Department of Transportation (the "Director") from continuing a project to construct a bridge before the final environmental impact statement ("FEIS") was reconsidered pursuant to federal law. 549 F.3d at 331. In discussing the contours of the *Ex parte Young* doctrine, we stressed the following principles:

> This "special relation" requirement ensures that the appropriate party is before the federal court, so as not to interfere with the lawful discretion of state officials. Primarily, the requirement has been a bar to injunctive actions where the relationship between the state official sought to be enjoined and the

> enforcement of the state statute is *significantly atten-uated*. Such cases have been dismissed on the ground that general authority to enforce the laws of the state is an insufficient ground for abrogating Eleventh Amendment immunity. Thus, the Direc-tor's connection to the [state statute] need not be qualitatively special; rather, "special relation" under *Ex parte Young* has served as a measure of proximity to and responsibility for the challenged state action. This requirement ensures that a federal injunction will be effective with respect to the underlying claim.

*Id.* at 332-33 (internal quotations, citations, and alterations omitted).

We then rejected the Director's argument that he did not have a "special relation" to the National Environmental Policy Act and its state-law analogues. We noted the Director's supervisory authority over the state's participation in the FEIS process, his "deep[] involve[ment]" in preparing the chal-lenged FEIS and procuring permits to proceed with the con-struction of the bridge on the basis of the FEIS; and, pursuant to federal law, his authority as head of the "joint lead agency" with the Federal Highway Administration (FHWA), given that the two agencies cooperated to draft any environmental document required for the FEIS for the proposed bridge. *Id.* at 333. Thus, we concluded that the Director possessed "a suf-ficient connection to the alleged violation of federal law" to establish a "special relation" under *Ex parte Young. Id.* In contrast, the Attorney General's authority over the VFOIA is "significantly [more] attenuated." *Id.* As discussed *supra*, the Attorney General has no specific statutory enforcement authority under the VFOIA. In addition, he has not issued any advisory opinions specifically directing state agencies to deny VFOIA requests by non-citizens, [5] nor has he participated in

---

[5]Although the Appellants claim that the Attorney General has issued "hundreds" of advisory opinions on similar facts, they do not point us to

the decisionmaking process of those agencies. Thus, his general authority to issue advisory opinions, in the abstract, is not sufficient to establish a "special relation" for *Ex parte Young* purposes.

In addition, our holding is consistent with those of our sister circuits that have dismissed the Attorney General when no special relation existed between his office and the challenged statute. *See Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (en banc) (plurality opinion) (holding that Attorney General was not a proper party where plaintiffs challenged a Louisiana statute that provided a private cause of action against doctors who performed abortions, because the Attorney General did not have a special enforcement connection to the statute); *Smith v. Beebe*, 123 F. App'x 261 (8th Cir. 2005) (holding that Attorney General was not a proper party in a § 1983 action, because he did not bear a special relation to a challenged tolling provision). We express no opinion on whether a special relationship would exist if an agency relies on an advisory opinion explicitly interpreting VFOIA to apply only to Virginia citizens. *See Gay Lesbian Bisexual Alliance v. Evans,* 843 F. Supp. 1424, 1426 (M.D. Ala. 1993) (holding that the Attorney General of Alabama was a proper party in

---

any particular opinion in which the Attorney General has instructed state agencies *not* to process VFOIA requests by non-citizens. The opinions cited by the Appellants—2 Op. Att'y Gen. 95 (2002) (regarding the circuit court clerk's duty to provide access to digital copies of the court's database of judicial or court records), and 2 Op. Att'y Gen. 149 (2003) (regarding the VFOIA's exception from disclosure for confidential information)—are inapposite, as they merely quote the "citizens of the Commonwealth" language in addressing other legal questions under the Act. Similarly, although the Appellants refer us to the Attorney General's discussion of the Act's procedures on the official Web site, the site does not specifically direct agencies to deny claims by citizens, again merely parroting the broad "citizen" language of the statute. *See* Va. Coal. for Open Gov't, FOIA Overview & FAQs, http://www.opengovva.org/virginias-foia-the-law/foia-overview-a-faqs-lawmenu-156 (last visited April 12, 2010).

a suit challenging an Alabama statute that prohibited universities from allocating public funds to support any group that promoted lifestyles prohibited by sodomy and sexual misconduct laws, because the university enforced the statute "allegedly in reliance on an 'advisory opinion' from the Attorney General"),[6] *aff'd sub nom. Gay Lesbian Bisexual Alliance v. Pryor*, 110 F.3d 1543 (11th Cir. 1997) (affirming, without discussing, this holding).

Finally, even were we to find a special relation, we cannot apply *Ex parte Young* because the Attorney General has not acted or threatened to act. *See Ex parte Young*, 209 U.S. at 155-56; *Gilmore*, 252 F.3d at 330. The Attorney General has neither personally denied any of the Appellant's VFOIA requests nor advised any other agencies to do so. *Cf. Minner v. Lee*, 458 F.3d 194, 198-202 (3d Cir. 2006) (holding that Delaware's FOIA violated the Privileges and Immunities Clause and affirming the district court's injunction barring the Attorney General from enforcing the law where plaintiff requested records from the Attorney General). Moreover, the Appellants do not allege that the Deputy Commissioner or the County Director relied on the Attorney General's advice in denying their VFOIA requests. *See Pryor*, 110 F.3d 1543 (affirming, without discussing, the district court's decision that the Attorney General of Alabama was a proper party, because the university relied "on a specific 'advisory opinion' from the Attorney General"). Because the Attorney General has not enforced, threatened to enforce, or advised other agencies to enforce the VFOIA against the Appellants, the *Ex*

---

[6] In *Evans*, the University of South Alabama requested an Attorney General opinion regarding the disbursement of its funds to a student group, the Gay Lesbian Bisexual Alliance; received an opinion that stated the funds should not be released; and acted in reliance on that opinion to deny funding, an act which, the plaintiffs argued, violated their First Amendment rights. *Evans,* 843 F. Supp. at 1426. In the instant case, however, the Attorney General was not requested for, nor did he issue advice respecting, the denial of claims under the VFOIA based on a claimant's noncitizenship.

*parte Young* fiction cannot apply. *See Ex parte Young*, 209 U.S. at 155-56. We affirm the district court's dismissal of the Attorney General and Stewart from the suit.

## B. Standing

McBurney and Hurlbert next argue that the district court improperly dismissed them on standing grounds. The "irreducible constitutional minimum of standing" requires (1) "an injury in fact—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical"; (2) "causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant"; and (3) "redressability—a likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998) (internal quotation marks and citations omitted); *see Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000) (en banc) (same). "The standing doctrine, of course, depends not upon the merits, but on whether the plaintiff is the proper party to bring the suit." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 460 (4th Cir. 2005) (internal quotation marks, citations, and alteration omitted). Indeed, "[i]f a plaintiff's legally protected interest hinged on whether a given claim could succeed on the merits, then every unsuccessful plaintiff will have lacked standing in the first place." *Id.* at 461.

### 1. McBurney

The VFOIA contains several exemptions to protect confidential information, including an exemption from disclosure of "[a]ll records . . . that pertain to . . . child support enforcement." Va. Code Ann. § 63.2-102. The district court concluded that McBurney lacked standing because he failed to allege an injury, based on its conclusion that the records requested were not available under the VFOIA. Specifically, the district court concluded that the DCSE denied McBur-

ney's request because all the requested materials were confidential and thus exempt from disclosure under the Act regardless of his citizenship. McBurney now argues that some of the requested documents were not confidential documents and that the DCSE's denial with respect to these documents was based solely on the grounds of his non-citizenship.

It is undisputed that although McBurney received more than eighty documents related to his child support case under a different statute, he did not receive general policy information (i.e., documents discussing how the DCSE administers cases like his), information that would arguably not fall within the Act's exemption for confidential documents. The Deputy Commissioner insists that McBurney never made a request for such general policy information. However, McBurney's request sought "[a]ny and all treaties, statutes, legislation, regulations, administrative guidelines, or any other reference material that the DSS and/or DCSE relies upon in actioning or administering child support cases where one parent is overseas." Thus, he has Article III standing to sue, because he has shown (1) injury in fact (lack of possession of the requested general policy information); (2) causation (the Deputy Commissioner continues to deny access to these records, although the basis for such denial is not clear); and (3) redressability (for which release of the information would remedy). *See Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989) (recognizing that the Court's "decisions interpreting the [FOIA] have never suggested that those requesting information under it need show more than that they sought and were denied specific agency records"). The district court thus erred in dismissing McBurney.

### 2. Hurlbert

The district court held that Hurlbert did not have standing because he failed to plead either (1) monetary relief or (2) an ongoing injury as required for declaratory or injunctive relief. The district court acknowledged that "Hurlbert's counsel in

responsive briefs and out-of-court documents alludes to Hurlbert making future [V]FOIA requests," but it refused to credit such assertions and held that the pleadings did not support a finding of Article III jurisdiction.

On appeal Hurlbert argues that the district court erred. He asserts that the court should have considered evidence outside of the pleadings, specifically, his affidavit submitted to support his cross-motion for a preliminary injunction. In this affidavit, he averred that after his VFOIA request was denied he "was dissuaded from making any further VFOIA requests in Henrico County." He also contends that even if the court properly confined its analysis to the pleadings, it ignored portions of his complaint that implied an ongoing injury. The County Director argues that "[t]he existence of facts not pled . . . are irrelevant when considering a motion to dismiss," citing *Bishop v. Bartlett* , 575 F.3d 419 (4th Cir. 2009), in support.

Here, the amended complaint itself is best read to plead an ongoing injury:[7] in paragraph 36 Hurlbert alleged that the Act "makes it impossible" for him to "pursue his common calling by obtaining Virginia public records through the VFOIA on an equal basis with Virginia's citizens." [8] Given that the com-

---

[7]Because the complaint states an ongoing injury, we do not address whether the district court should have considered Hurlbert's affidavit.

[8]As the dissent quite rightly points out, this statement is "a conclusion of law derived from the factual assertions in paragraphs 15 and 16." *Infra* at 32. The dissent objects to our "unwarranted" reliance on this "lone allegation," *infra* at 31, and posits that "[t]here are simply no factual allegations supporting the conclusion that Hurlbert suffered a prospective, ongoing injury that is 'concrete and particularized' as to the amended complaint," *infra* at 33 (internal quotation marks omitted). We respectfully disagree with this characterization. We read the conclusion of law in paragraph 36 in context with the very facts pled in paragraphs 15 and 16 of the complaint: (1) Hurlbert "*is* the sole proprietor of Sage Information Services"; (2) his May 2008 request had been denied on the basis of his non-citizenship; (3) he " *is* in the business of obtaining real estate tax assess-

plaint stated sufficient facts to support standing, [9] the district court erred in dismissing Hurlbert for lack of standing. [10]

---

[9] ment records"; and (4) he " *obtains* these records by submitting FOIA requests to state governmental agencies." We agree with the dissent that the conclusion of law in paragraph 36, standing alone, would not be sufficient to plead an ongoing injury; however, when read with Hurlbert's factual allegations, we find it to be so. The factual allegations demonstrated that Hurlbert is the sole proprietor of a company that makes a business of submitting FOIA requests to states and federal agencies. We find that these facts are "'sufficiently real and immediate to show an existing controversy.'" *Infra* at 33 (quoting *Comite de Apoyo a los Trabajadores Agricolas*, 995 F.2d 510, 515 (4th Cir. 1993)).

The dissent also states that "[o]nce the Director provided Hurlbert with the data he sought, Hurlbert failed to plead any additional facts in his amended complaint indicating that he was likely to make additional requests for such information in the immediate future." *Infra* at 33. Because Hurlbert's amended complaint "mirrored" his complaint, the dissent concludes that "inferring an ongoing injury from the single sentence in paragraph 36 is simply too speculative and conjectural." *Id.* at 34 (internal quotation marks omitted). Because we read the complaint as a whole to be sufficient, we respectfully disagree.

[9] *Bishop* does not change this analysis, because in *Bishop* the plaintiffs did not allege any injury at all. In *Bishop*, four North Carolina citizens challenged the process by which a constitutional amendment was placed before voters, arguing that it violated the Due Process Clause of the Fourteenth Amendment. 575 F.3d at 421. The district court dismissed the case for lack of standing, a decision we affirmed. *Id.* at 422. First, we noted that in the complaint the plaintiffs "did not allege that they had actually been misled by the ballot language." *Id.* at 422. In fact, they later "acknowledged that even though each of them had voted in the November 2004 election, [not one of them was] misled by the ballot language." *Id.* Thus, we agreed with the district court that there was no injury in fact. *Id.* at 424.

[10] The County Director also argues that Hurlbert's claim is moot, because he was provided with the requested records. However, because Hurlbert has pleaded an ongoing injury, the fact that the government provided him with past records requested does not moot his claim going forward. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. at 167, 190 (2000) ("[A] defendant claiming that its voluntary compliance moots a case bears a formidable burden of showing that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." (citation omitted)).

*C. Constitutional Claims*

We decline to address the merits of the Appellants' claim, and instead remand for the district court to consider Hurlbert's and McBurney's claims in light of our holding that they have standing to sue.

**AFFIRMED** in part,     **REVERSED** in part, and **REMANDED** for the district court to proceed consistent with this opinion.

GREGORY, Circuit Judge, concurring:

After erroneously concluding that appellant Hurlbert lacked standing to proceed with his claim, the district court stated that even if Hurlbert had standing "it is unlikely that [he] would have succeeded on the merits." *McBurney v. Mims*, No. 3:09-CV-44, 2009 U.S. Dist. LEXIS 36971, at *23 (E.D. Va. May 1, 2009). In my view, this conclusion is based on a clearly incorrect interpretation of the Privileges and Immunities Clause. So while I join Judge Siler's opinion in full, I write separately to address a legal error that appears likely to recur without further guidance from this Court.    *See Levy v. Lexington County, S.C. Sch. Dist. Three Bd. of Tr.*, 589 F.3d 708, 716 (4th Cir. 2009).

The Privileges and Immunities Clause in Article IV Section 2 of the Constitution requires that states treat their residents and nonresidents alike in matters "'bearing on the vitality of the Nation as a single entity.'" *Sup. Ct. of N.H. v. Piper*, 470 U.S. 274, 279 (1985) (quoting *Baldwin v. Mont. Fish & Game Comm'n*, 436 U.S. 371, 383 (1978)). The Clause protects several rights, including the right of one state's citizens to engage in economic activity in another state "on terms of substantial equality with the citizens of that State."    *Toomer v. Witsell*, 334 U.S. 385, 396 (1948). Specifically, the Supreme Court has held that under the Privileges and Immunities Clause, states may not discriminate against nonresidents when distrib-

uting professional licenses, nor may they prohibit nonresidents from engaging in economic activity that residents may engage in. *See Piper*, 470 U.S. at 280 (explaining the Court's precedent and holding that states may not prohibit nonresidents from practicing law in the state). Stated differently, the Clause prohibits states from discriminating against nonresidents' pursuing a "common calling."     *Baldwin*, 436 U.S. at 383; *O'Reilly v. Bd. of Appeals*, 942 F.2d 281, 284 (4th Cir. 1991).

Though this prohibition is not absolute, a state's attempt to burden a right protected by the Privileges and Immunities Clause triggers heightened judicial scrutiny. A state may only discriminate against another state's citizens on matters that implicate the Privileges and Immunities Clause if it has a "substantial reason" for the discriminatory practice and that practice "bears a substantial relationship to the state's objectives." *Piper*, 470 U.S. at 284;  *O'Reilly*, 942 F.2d at 284.

Notably, the only circuit to consider an analogous citizens-only provision found that the provision did violate the Privileges and Immunities Clause.   *Lee v. Minner*, 458 F.3d 194, 195 (3d Cir. 2006). The Third Circuit in      *Lee* held that the citizens-only provision in Delaware's Freedom of Information Act violated the plaintiff's fundamental right to "engage in the political process with regard to matters of national importance on equal terms with state residents."* *Id.* at 199. Though the court noted that Delaware had a substantial interest in establishing and defining its own political community, it dismissed the state's argument that the citizens-only provision bore a substantial relationship to that interest, and held that denying noncitizens information did nothing to make the citizenry more cohesive. *Id.* at 201.

---

*Though the plaintiff also alleged that Delaware's provision violated his right to pursue a common calling, the court declined to address this argument. *Lee*, 458 F.3d at 199.

The district court apparently gave little or no weight to our sister circuit's rationale. Rather, it interpreted our decision in *O'Reilly* as requiring a particularly high level of interference with a noncitizen's common calling by the state to implicate the Privileges and Immunities Clause. The district court also interpreted the Supreme Court's decision in *Piper* to mean that a state must burden the right "with the aim of improving the competitive advantage of [its] citizens over noncitizens" in order to violate the Constitution. *McBurney*, 2009 U.S. Dist. LEXIS 36971, at *24. Neither of these readings is correct.

In *O'Reilly*, we held that a Maryland licensing regulation burdened the right to pursue a common calling and violated the Privileges and Immunities Clause where it prohibited non-resident cab drivers from picking up fares in a specific county. 942 F.2d at 284. At no point did we suggest that the state had to severely burden that right in order to implicate the constitutional protection; instead we invalidated the regulation simply because it burdened the plaintiff's right, without regard to the burden's severity or degree. *Id.* The extent of any burden might well be an appropriate consideration when analyzing whether the challenged action bears a "substantial relationship" to a state's important interest, but generally is not relevant in deciding whether there is a burden in the first instance. After all, the Framers did not view one state's discrimination against another state's citizens in isolation, but rather considered the prospect of other states' responding with reciprocal and retaliatory burdens that, in the aggregate, could threaten the Nation's economic unity. *See Toomer*, 334 U.S. at 395-96.

Likewise, nowhere in *Piper* — nor in any other case of which I am aware — has the Supreme Court limited application of the Privileges and Immunities Clause to those instances in which a state passes a statute "with the *aim* of improving the competitive advantage of its citizens over non-citizens." *McBurney*, 2009 U.S. Dist. LEXIS 36971, at *24.

(emphasis added). The Court in  *Piper* did not find that New Hampshire refused to license out-of-state attorneys with "the aim" of benefiting resident lawyers, but rather found that it impermissibly burdened nonresidents' right to pursue their common calling even assuming the state's aim was unrelated to any desire to regulate economic competition.  *See* 470 U.S. at 283. Again, the state's goal is surely relevant when determining whether any burden on nonresidents' pursuit of a common calling is justified by the state's substantial interest, *id.* at 285, but is of no moment when determining whether the challenged statute burdens a fundamental right in the first instance.

Appellant Hurlbert operates a business in California that collects and synthesizes information for a particular audience and sells it for profit. He alleges that from time to time he seeks access to information contained in Virginia's official records as part of the services he provides to clients. And, as Judge Siler's opinion quite correctly notes, he claims that Virginia will continue to deny him access to much of this information while providing it to Virginia residents. These allegations, if true, make out a classic common-calling claim under the Privileges and Immunities Clause.

The ability to quickly and efficiently gather and disseminate information is central to a great deal of economic activity in our aptly-named Information Age. The individual or business that can access relevant information quickest and most efficiently has a distinct advantage when competing in the advertising, technology, entertainment, and business arenas. A statute that discriminates against a nonresident's ability to access information therefore implicates the right to pursue a common calling in the Twenty-First century in much the same way that it would if it burdened an angler's ability to catch fish, *see Toomer*, 334 U.S. at 396-97, or a cabby's ability to drive fares in the Twentieth,  *see O'Reilly*, 942 F.2d at 284. Because such a statute burdens a protected right, it is then

incumbent upon the state to prove that the statute withstands heightened scrutiny.

The district court did not properly engage in this analysis below. In my view, it must do so on remand when fully considering the plaintiffs' substantive legal claims and factual contentions in order to avoid committing reversible error. As nothing in Judge Siler's opinion suggests otherwise, I join in that opinion.

AGEE, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority opinion except as to section III(B)(2). I write separately as to that section because I do not find that Roger W. Hurlbert has adequately pled an ongoing injury sufficient to confer standing. Accordingly, I respectfully dissent as to section III(B)(2) of the majority opinion and I would affirm the district court's judgment with respect to Hurlbert.

I.

In June 2008 Hurlbert made a telephone request pursuant to VFOIA for real estate records in the possession of the Director of the Real Estate Assessment Division of Henrico County, Virginia ("the Director"). When that request was denied, Hurlbert filed suit against the Director, who filed his answer to Hurlbert's initial complaint on February 16, 2009. By letter dated the next day, February 17, 2009, the Director provided Hurlbert with the requested data.

On March 10, 2009, the Director filed a motion to dismiss Hurlbert's suit pursuant to Rule 12(c) and Rule 12(h)(3) based, in part, on a "[l]ack of [j]urisdiction." J.A. 54A. In the memorandum of law accompanying his motion, the Director specifically argued that Hurlbert lacked standing based on the incongruence between his allegations of past injury and his

request for prospective relief.[1] It is clear from the record that, at least by March 10, 2009, Hurlbert was aware that his standing was at issue. Despite this knowledge, the plaintiffs, including Hurlbert, filed an amended complaint on March 18, 2009 that did not materially alter Hurlbert's allegations and, indeed, repeated them almost verbatim. The specific allegations in the amended complaint pertaining to Hurlbert are as follows:

> 15. Plaintiff Roger Hurlbert is the sole proprietor of Sage Information Services. Mr. Hurlbert is in the business of obtaining real estate tax assessment records. Mr. Hurlbert obtains these records by submitting FOIA requests to state governmental agencies.

> 16. Mr. Hurlbert submitted a FOIA request to the Henrico County Real Estate Assessor's Office pursuant to Virginia Code §   2.2-3704. The request was made by telephone on June 5, 2008. In that telephone conversation, an official from the Assessor's Office denied Mr. Hurlbert's FOIA request. The only reason the official gave for denying the request was that Mr. Hurlbert is not a citizen of Virginia.

> . . . .

> 36. A state law that denies non-citizens the right to pursue their common calling violates Article IV's Privileges and Immunities Clause. The Henrico

---

[1] In his memorandum of law submitted to the district court the Director argued that "[Hurlbert's] Complaint does not allege that denial of these materials caused him any particularized harm, nor has he requested monetary damages. More tellingly, Mr. Hurlbert has also failed to allege that he intends to make a similar request of Mr. Davis in the future or is otherwise likely to again be denied public records by Mr. Davis or the County of Henrico's Real Estate Assessment Division." Dist. Ct. Docket No. 21 at 6.

County Assessor's Office denied Mr. Hurlbert access to public records based on the citizens-only provision in Virginia Code § 2.2-3704. Section 2.2-3704 makes it impossible for Mr. Hurlbert to pursue his common calling by obtaining Virginia public records through Virginia's FOIA on an equal basis with Virginia's citizens. This discrimination contravenes the Privileges and Immunities Clause.

J.A. 62A-67A.

The final paragraph of the amended complaint contains a vague general statement alleging irreparable harm:

42. Deprivation of a constitutional right constitutes irreparable harm. The citizens-only provision in Virginia Code § 2.2-3704 denies the Plaintiffs access to information. As a result, the provision bars the Plaintiffs from participating in a range of economic, political, and social activities . . . .

J.A. 69A.

The Director argues that Hurlbert lacks standing because "Hurlbert alleged only one discrete instance where his alleged constitutional rights were violated." Br. of Appellee at 31. In other words, the Director asserts there is a fatal variance between the past injury alleged and the prospective remedies sought. I agree.

II.

A.

"It is elementary that the burden is on the party asserting jurisdiction to demonstrate that jurisdiction does, in fact, exist." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) ("The

burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction.").

In this case, the Director challenged Hurlbert's standing by filing a motion for judgment on the pleadings pursuant to Rule 12(c). "[W]e review the district court's dismissal [under Rule 12(c)] *de novo* and in doing so apply the standard for a Rule 12(b)(6) motion." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; 'importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (alteration in original).

Clearly, by moving for judgment on the pleadings, the Director's motion to dismiss was designed to test the sufficiency of Hurlbert's allegations as a basis for subject matter jurisdiction. In his memorandum of law submitted to the district court the Director argued that:

> [Hurlbert's] Complaint does not allege that denial of [the data] caused him any particularized harm, nor has he requested monetary damages. More tellingly, Mr. Hurlbert has also failed to allege that he intends to make a similar request of Mr. Davis in the future or is otherwise likely to again be denied public records by Mr. Davis or the County of Henrico's Real Estate Assessment Division.

Dist. Ct. Docket No. 21 at 6. The Director did not challenge the veracity of the facts pled and, indeed, had already admitted in his answer to the initial complaint that his office had received a written request from Hurlbert seeking records pursuant to VFOIA. J.A. 26A-27A.

On appeal, Hurlbert first puts forth a procedural argument, claiming "[t]he district court erred when it confined its stand-

ing inquiry to the Amended Complaint alone . . . ." Br. of
Appellant at 26. Specifically, Hurlbert avers that the district
court should have considered his declaration, filed after his
initial complaint, in which he stated that after the Director
denied his request for data, he "was dissuaded from making
any further FOIA requests in Henrico County." J.A. 49A.
However, the district court was not obligated to go beyond the
pleadings in resolving the Director's motion to dismiss.

   Hurlbert cites *Warth v. Seldin*, 422 U.S. 490 (1975) in sup-
port of his position that the district court was required to con-
sider materials outside the pleadings in adjudicating the
motion to dismiss.    *Warth* stands only for the proposition,
clearly in accord with our precedent, that a district court *may*,
but is not *required*, to consider such materials. *See Warth*, 422
U.S. at 501 (explaining that while "both the trial and review-
ing courts must accept as true all material allegations of the
complaint," "it is within the trial court's power to allow or to
require the plaintiff to supply, by amendment to the complaint
or by affidavits, further particularized allegations of fact
deemed supportive of plaintiff's standing").

   Hurlbert also relies on our statement in  *Richmond, Freder-
icksburg & Potomac R.R. Co. v. United States* , 945 F.2d 765
(4th Cir. 1991) that "[i]n determining whether jurisdiction
exists, the district court is to regard the pleadings' allegations
as mere evidence on the issue, and      *may* consider evidence
outside the pleadings without converting the proceeding to
one for summary judgment." 945 F.2d at 768 (emphasis
added). Not only did that case also make the district court's
consideration of non-pleading material permissive rather than
mandatory, it also involved a motion under Rule 12(b)(1)
which, unlike the Rule 12(c) motion to dismiss filed in this
case, is unaffected by Rule 12(d). Rule 12(d) specifically
addresses a district court's consideration or exclusion of mate-
rials outside the pleadings. [2]

---

[2]Rule 12(d) provides:

   If, on a motion under  *Rule 12(b)(6)*  or  *12(c)*, matters outside the

For the first time on appeal, Hurlbert argues in his reply brief that "[b]y submitting non-pleading materials with his motion, [the Director] expanded the scope of the standing inquiry beyond the logical sufficiency of the complaint to include factual evidence bearing on the truth of Hurlbert's allegations." Reply Br. of Appellant at 8. We need not address any such argument, however, as any argument raised for the first time in a reply brief has been abandoned. *Edwards*, 178 F.3d at 241 n.6; *see also U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 356 n.8 (4th Cir. 2009) (citing *Yousefi v. INS*, 260 F.3d 318, 326 (4th Cir. 2001)); *United States v. Al-Hamdi*, 356 F.3d 564, 571 n.8 (4th Cir. 2004).

In my view, Hurlbert's argument would have no merit in any event. A plain reading of the district court's opinion reveals that it did not rely on non-pleading materials submitted by either party in reaching its decision regarding Hurlbert's standing. Therefore, Rule 12(d) simply would not apply.[2]

"As is true of practice under Rule 12(b)(6), it is well-settled that it is within the district court's discretion whether to accept extra-pleading matter on a motion for judgment on the pleadings and treat it as one for summary judgment or to reject it and maintain the character of the motion as one under Rule 12(c)." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1371 (3d ed. 2010). As the Eleventh Circuit has recently explained, "[a] judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside

---

pleadings are presented to *and not excluded by the court*, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d) (emphasis added).

[3]Moreover, the term "dissuaded" in Hurlbert's declaration is insufficiently descriptive to establish an actual or imminent injury-in-fact.

the pleadings." *Harper v. Lawrence County*, 592 F.3d 1227, 1232 (11th Cir. 2010). I agree with our sister circuit's view that "'not considering' such matters is the functional equivalent of 'excluding' them—there is no more formal step required." *Id.*

For the reasons set forth above, the district court was not required to consider Hurlbert's declaration nor was it required to convert the proceeding to one for summary judgment.

### B.

To possess the constitutional component of standing, a party must meet three requirements:

> (1) [the party] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan*, 504 U.S. 555, 560-61 (1992)); *Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009). As the party invoking federal jurisdiction, Hurlbert bears the burden of establishing these elements. *Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 231 (4th Cir. 2008).

> Of course, Plaintiffs need not "await the consummation of threatened injury to obtain preventive relief." *Blum v. Yaretsky*, 457 U.S. 991, 1000 (1982). Instead, where a party seeks prospective relief, "[t]he question becomes whether any perceived threat to [the plaintiff] is sufficiently real and immediate to show an existing controversy." *Id.*; *see also Lujan*,

504 U.S. at 564 (examining imminence of asserted injury); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (examining likelihood that plaintiff would suffer future injury).

*Long Beach Area Chamber of Commerce v. City of Long Beach*, 603 F.3d 684, 689 (9th Cir. 2010).

To meet the "injury in fact" requirement, Hurlbert bears the burden of proving "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotations omitted). While Hurlbert arguably pled a concrete and actual injury — the denial of his VFOIA request — sufficient to confer standing at the time he filed suit, he did not plead any ongoing injury sufficient to *maintain* standing for declaratory and injunctive relief.

The allegations in paragraphs 15 and 16 of the amended complaint clearly indicate that Hurlbert pled only that he suffered an alleged past injury as a result of the Director's denial of his June 2008 request. He pled no future harm that he might reasonably expect to suffer as a result of Virginia's residency requirement. Even though Hurlbert pled a past injury and knew that his standing had been challenged, he nonetheless filed an amended complaint that did not request compensatory damages for his losses arising out of the Director's June 2008 denial. Instead, he sought a court order:

1. Declaring that Virginia Code § 2.2-3704 violates the Privileges and Immunities Clause of Article IV and the dormant Commerce Clause of the United States Constitution;

2. Enjoining the Defendants from enforcing the citizens-only provision of Virginia Code § 2.2-3704;

3. Awarding the Plaintiffs their costs and reasonable
attorneys fees pursuant to 42 U.S.C.A. §      1988(b);
and

4. Granting the Plaintiffs such other relief as the
Court may deem just and proper.

J.A. 18A.

   The district court was therefore confronted, incongruously,
with pleadings that sought prospective declaratory and injunc-
tive relief based only on a single past (and since remedied)
harm. As a result, I would find the district court correctly
determined "that [Hurlbert] has not adequately pled an ongo-
ing injury, but bases his claims solely on not receiving the
documents he requested" in June 2008. J.A. 84A.

   Although Hurlbert's failure to plead an ongoing injury in
fact is, in and of itself, fatal to his standing, his pleadings also
fail to establish the element of redressability. As the district
court explained:

> If [Hurlbert] had alleged a continuing violation *or
> the imminence of a future violation*, the injunctive
> relief requested would remedy the alleged harm.
> *Steel Co. v. Citizens for a Better Env't*, 523 U.S.
> 108-09 (1998). But no such allegation is made in
> either [Hurlbert's] original or amended complaint,
> and therefore the Complaint fails to confer Hurlbert
> with standing as an injunction, which provides relief
> from a future harm, cannot redress [his] claim of a
> singular, past wrong.

J.A. 84A (emphasis added). Once the Director provided Hurl-
bert with the information he sought, the "controversy" Hurl-
bert pled, the denial of information in June 2008, had been

resolved. As a result, his allegations lack two of the three elements required for standing — injury in fact and redressability.[4]

The majority relies on Hurlbert's lone allegation that "Section 2.2-3704 makes it impossible for [him] to pursue his common calling by obtaining Virginia public records through Virginia's FOIA on an equal basis with Virginia's citizens," J.A. 17A, 67A, and concludes that "the complaint itself is best read to plead an ongoing injury . . . ."  *Supra* at 16. In my view, this reliance is unwarranted. [5]

Hurlbert repeated in both his initial and amended complaints that VFOIA "makes it impossible . . . to pursue his

---

[4]Although my dissent is based on the dissonance between Hurlbert's allegations of past harm and his request for prospective relief, I would also find that his claims are moot. Hurlbert argues that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."  *Friends of the Earth* , 528 U.S. at 189. I find no merit in Hurlbert's argument because it presupposes that declaratory and injunctive relief are "[t]he only effective remedies for [his] *ongoing injury*." Br. of Appellant at 28 (emphasis added). In finding that he has not pled an ongoing injury but only a past single incident that has since been remedied, I see no reason why the mootness doctrine would not likewise bar his claim.

[5]The majority disagrees with my assertion that it relies only on the allegation in paragraph 36 of the amended complaint and avers that it "read[s] the conclusion of law in paragraph 36 in context with the very facts pled in paragraphs 15 and 16 of the complaint" and "read[s] the complaint as a whole." But when read in context, Hurlbert's statements that he " *is* the sole proprietor of Sage Information Services," a company that " *is* in the business of obtaining real estate tax assessment records," and that he " *obtains* these records by submitting FOIA requests to state governmental agencies" are merely prefatory to his only concrete and particularized allegation of damage. This allegation—alleged in the past tense—asserts only that he " *submitted* a FOIA request" that was " *denied*." J.A. 62A. With respect to my colleagues, the fact that he "is" in the business of making such requests and once made such a request that had been denied does not demonstrate that an additional request was "actual or imminent." The facts alleged simply did not indicate that any threat to Hurlbert was "sufficiently real and immediate to show an existing controversy."  *Blum*, 457 U.S. at 1000.

common calling by obtaining Virginia public records . . . on an equal basis with Virginia's citizens." The majority views this statement as sufficiently pleading an ongoing injury. I disagree. Considered in context, I believe the statement is more appropriately read as a conclusion of law derived from the factual assertions in paragraphs 15 and 16. Such a reading comports with the language in the complaints.

First, use of the legal term of art "common calling" evinces a legal, versus colloquial, meaning. [6] The Supreme Court's longstanding jurisprudence establishes that a state may not, in most circumstances, interfere with a nonresident's pursuit of a common calling. In light of this clarity, the sentence at issue in paragraph 36 is nothing more than a restatement of the legal determination to be made by the district court – whether the Director's denial of Hurlbert's request in June 2008 violates the Privileges and Immunities Clause.

Secondly, the specific allegations in paragraph 15 allege a past, not ongoing or future, injury. At the time the complaint

---

[6]The Supreme Court has repeatedly emphasized that the Privileges and Immunities Clause of the federal Constitution protects the rights of citizens in one state to transact business in another state "on terms of substantial equality with the citizens of" the other state. *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 280 (1985); *Toomer v. Witsell*, 334 U.S. 385, 395 (1948) (stating that the Clause "was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy"); *see e.g. Supreme Court of Va. v. Friedman*, 487 U.S. 59, 70 (1988) (holding "that Virginia's residency requirement for admission to the State's bar without examination violates the Privileges and Immunities Clause"). This has been referred to as the fundamental right to pursue a common calling. *See United Bldg. & Constr. Trades Council v. Mayor and Council of Camden*, 465 U.S. 208, 219 (1984) ("Certainly, the pursuit of a common calling is one of the most fundamental of those privileges protected by the Clause."); *Hicklin v. Orbeck*, 437 U.S. 518, 524 (1978) ("Appellants' appeal to the protection of the Clause is strongly supported by this Court's decisions holding violative of the Clause state discrimination against nonresidents seeking to ply their trade, practice their occupation, or pursue a common calling within the State.").

was drafted and filed, Hurlbert had requested but had not yet been given the data. Under these circumstances, the statement in paragraph 22 of the initial complaint understandably claims, using the present tense, that VFOIA prevents Hurlbert from pursuing his common calling; however, no such circumstance existed for paragraph 36 of the amended complaint. Hurlbert did not allege that the Act would continue to interfere with his pursuit of a common calling nor indicate whether or when he expected to make another request for Virginia records. There are simply no factual allegations supporting the conclusion that Hurlbert suffered a prospective, ongoing injury that is "concrete and particularized" as to the amended complaint.

While we have acknowledged that "prospective challenges are not per se invalid," we have also explained that "the threat of injury must be 'sufficiently real and immediate to show an existing controversy.'" *Comite de Apoyo a los Trabajadores Agricolas (CATA) v. U.S. Dep't of Labor*, 995 F.2d 510, 515 (4th Cir. 1993) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). "The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983)(quoting *O'Shea*, 414 U.S. at 502).

At the time Hurlbert filed his initial complaint he may have had standing to sue the Director based on the allegations pled concerning the denial of his June 2008 VFOIA request, but he failed to seek compensatory damages flowing from that denial. Once the Director provided him with the data he sought, Hurlbert failed to plead any additional facts in his amended complaint indicating that he was likely to make additional requests for such information in the immediate future. He failed to do this even though he was aware that the Director had challenged his standing to sue. Indeed, the alle-

gations pertaining to Hurlbert in the amended complaint mirrored those set forth in his initial complaint. As a result, I would find, contrary to the majority's holding with respect to Hurlbert, that inferring an ongoing injury from the single sentence in paragraph 36 is simply too "speculative and conjectural."

Accordingly, I respectfully dissent from section III(B)(2) of the majority opinion.