UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

MARK J. MCBURNEY, *et al.*,

Plaintiffs,

v.

KENNETH T. CUCCINELLI II, *et al.*,

Defendants.

Action No. 3:09-CV-44

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiffs' Cross Motion for Summary Judgment (Doc. No. 56); the State Defendant's Motion for Summary Judgment (Doc. No. 54); and Defendant Thomas C. Little's Cross-Motion for Summary Judgment (Doc. No. 52). For the reasons stated below, the Court GRANTS Defendant Thomas C. Little's Cross-Motion for Summary Judgment and the State Defendant's Motion for Summary Judgment and DENIES Plaintiffs' Cross Motion for Summary Judgment.

### I. BACKGROUND

Plaintiffs Mark J. McBurney ("McBurney") and Roger W. Hurlbert ("Hurlbert") allege different facts that support their common argument that Virginia's Freedom of Information Act ("VFOIA") violates the dormant Commerce Clause and the Privileges and Immunities Clause of Article IV ("Privileges and Immunities Clause") of the United States Constitution.

#### a. McBurney's Claims

McBurney was a Virginia citizen from 1987 until 2000. He married Lore Ethel Mills ("Mills") while living in Virginia. The couple had a son, but divorced in 2002. A court awarded Mills custody and ordered McBurney to pay child support. McBurney and Mills subsequently entered into a

1

private agreement whereby their son would live with McBurney in Australia and Mills would pay child support. Mills eventually defaulted on the agreement and McBurney, still in Australia, filed a child support application with the Virginia Department of Social Services' Division of Child Support Enforcement ("DCSE") in July 2006. DCSE failed to file a proper petition and McBurney was denied child support payments for nine months.

McBurney moved back to the United States, to Rhode Island, and made a VFOIA request in April 2008 for all documents pertaining to him, his son, and his ex-wife. DCSE denied his request on grounds that portions of the information requested were confidential under Virginia law and he could not receive the non-confidential information because he was not a Virginia citizen. McBurney filed a second VFOIA request in May 2008 that listed a Virginia address, but DCSE also denied this request because McBurney was not a Virginia citizen. DCSE did, however, inform McBurney that he could obtain the requested information under Virginia's Government Data Collection and Dissemination Practices Act. McBurney submitted a request under this Act and obtained some, but not all, of the documents he could have received under VFOIA.

b. Hurlbert's Claims

Hurlbert is a California citizen and the sole proprietor of Sage Information Services, a California company. Hurlbert is in the business of obtaining real estate tax records from state agencies throughout the United States, including in Virginia. He requests records pursuant to states' freedom of information statutes. Hurlbert charges $75 per hour for his services, which include procuring records and using negotiation or litigation to obtain records if necessary.

Hurlbert filed a VFOIA request for real estate property assessment records with Henrico County's Real Estate Assessment Division in June 2008. The County denied the request because Hurlbert was not a Virginia citizen. Hurlbert subsequently received the requested information in

February 2009, when the County sent the records to his attorney in Virginia. Hurlbert has not attempted to request records from Virginia since June 2008. Prior to having his request denied, Hurlbert made seventeen requests for records from Virginia, fifteen of which were in early 2008.

c. Procedural Posture

McBurney and Hurlbert commenced an action on January 21, 2009, against the Attorney General for the Commonwealth of Virginia, then Robert F. McDonnell;[1] Nathaniel L. Young, Deputy Commissioner and Director of Virginia's DCSE ("the State Defendant"); and Samuel A. Davis ("Davis"),[2] Director of the Real Estate Assessment Division in Henrico County, Virginia. Plaintiffs' action sought declaratory and injunctive relief from enforcement of VFOIA pursuant to 42 U.S.C. § 1983. The Court granted Plaintiffs leave to amend their Complaint to add Bonnie E. Stewart ("Stewart") as a plaintiff on April 7, 2009.

The Attorney General and State Defendant filed a Motion to Dismiss and Remove the Attorney General as an Improper Party. Davis also filed a Motion to Dismiss. This Court granted both Motions. McBurney v. Mims, No. 3:09-CV-44, 2009 WL 1209037, at *6-7 (E.D. Va. May 1, 2009).[3] The Court held that the Attorney General was not a proper party under the Eleventh Amendment. Id. at *3-4. Because Stewart only asserted claims against the Attorney General, she was dismissed as a Plaintiff when the Attorney General was dismissed as a Defendant. The Court also held that McBurney and Hurlbert lacked standing to bring claims against the State Defendant and Davis and dismissed them as Plaintiffs. Id. at *6-7. Because only McBurney brought a claim against

---

[1] Plaintiffs initially named Attorney General Robert F. McDonnell, in his official capacity, as a Defendant. Kenneth T. Cuccinelli II is now the Attorney General and is substituted pursuant to the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 25(d) (stating that when a party who holds a public office ceases to hold that office while an action is pending, the officer's successor is automatically substituted as a party).
[2] Thomas C. Little ("Little") is now the Director of Henrico County's Real Estate Assessment Division and has been substituted pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.
[3] William C. Mims was Attorney General when this Court ruled on the Motions to Dismiss and was substituted as a Defendant in the stead of Robert F. McDonnell.

3

the State Defendant and only Hurlbert brought a claim against Davis, the Court dismissed Davis and the State Defendant as Defendants. Consequently, no parties remained before the Court and it dismissed the case.

Plaintiffs appealed the dismissal. The Fourth Circuit affirmed in part, reversed in part, and remanded the case for further proceedings. McBurney v. Cuccinelli, 616 F.3d 393, 404-05 (4th Cir. 2010). The Fourth Circuit affirmed the holding that the Attorney General was not a proper party, but found that McBurney and Hurlbert had standing to bring their claims. Id. at 403-04. Accordingly, this Court was directed to consider McBurney's and Hurlbert's claims on the merits.

## II. <u>LEGAL STANDARD</u>

A motion for summary judgment should be granted where "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of establishing the nonexistence of a triable issue of fact by "showing . . . that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

A court may consider the parties' pleadings, discovery materials, and affidavits to determine if a triable issue exists. Fed. R. Civ. P. 56(c)(2). "Summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Nat'l Ass'n of Gov't Emps. v. Fed. Labor Relations Auth., 830 F. Supp. 889, 897 (E.D. Va. 1993) (internal citation omitted). All "factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing [the] motion." Rossignol v. Voorhaar, 316 F.3d

4

516, 523 (4th Cir. 2003) (internal citation omitted).

When considering cross-motions for summary judgment, the court must apply the same standard and cannot resolve genuine issues of material fact. Monumental Paving & Excavating, Inc. v. Pa. Mfrs' Ass'n Ins. Co., 176 F.3d 794, 797 (4th Cir. 1999). The court should "consider and rule upon each party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard." Id.

### III. DISCUSSION

The Virginia Freedom of Information Act provides in relevant part:

> Except as otherwise specifically provided by law, all public records shall be open to inspection and copying by any citizens of the Commonwealth during the regular office hours of the custodian of such records. Access to such records shall not be denied to citizens of the Commonwealth, representatives of newspapers and magazines with circulation in the Commonwealth, and representatives of radio and television stations broadcasting in or into the Commonwealth.

Va. Code Ann. § 2.2-3704(A).

Plaintiffs move the Court to grant their Motion and (1) declare VFOIA's citizens-only provision unconstitutional because it violates the Privileges and Immunities Clause and the dormant Commerce Clause; (2) enjoin Defendants from enforcing the citizens-only provision; and (3) order Defendants to process McBurney's pending VFOIA request. Plaintiffs assert that VFOIA violates their rights under the Privileges and Immunities Clause by impeding their access to public information, rendering them unable to advocate for their interests, denying them equal access to courts, and preventing them from pursuing economic interests on the same footing at Virginia citizens. Plaintiffs further assert that VFOIA's citizens-only clause violates the dormant Commerce Clause because it erects barriers to interstate commerce, making it impossible for noncitizens to do business on an equal basis with Virginia citizens.

5

The parties have not shown a genuine dispute over any material fact. Accordingly, the Court decides only if any party is entitled to judgment as a matter of law.

a. Hurlbert Has Standing

To have standing, a plaintiff must show: (1) he suffered an injury, which means "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical;" (2) the injury was caused by the person sued; and (3) a court can likely redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal citation and quotation marks omitted).

Little argues that Hurlbert does not have standing because he cannot prove an injury and this Court cannot redress any alleged injury. Little argues that any future injury is speculative because Hurlbert cannot identify lost business caused by VFOIA's citizens-only provision or when he might request Virginia records in the future.

Plaintiffs argue that Hurlbert has standing. They maintain that he has been injured because he cannot pursue any business that involves requesting public records from Virginia. He can show causation because he has missed out on business opportunities because he is a noncitizen who cannot request public records under VFOIA. Finally, Hurlbert's injury is redressable by this Court because if the Court finds the VFOIA provision unconstitutional, and thus unenforceable, Hurlbert will be able to accept Virginia business.

The Fourth Circuit held that Hurlbert's amended complaint "is best read to plead an ongoing injury" and that "the complaint stated sufficient facts to support standing. . . ." McBurney v. Cuccinelli, 616 F.3d 393, 403-04 (4th Cir. 2010). Similarly, this Court finds that Hurlbert has standing. The amended complaint is sufficient to confer standing because it pleads injury in the form of lost revenue resulting from Hurlbert's inability to request and receive public records from

6

Virginia. Hurlbert can show causation because he can show that he has lost or is unable to take Virginia business because of VFOIA's citizens-only clause. Finally, Hurlbert can show redressability. He states that if the statute is declared unconstitutional and he is allowed to make the requests, he will be able to provide records for his clients, whom he has reason to believe would need Virginia records. Thus, this Court can redress Hurlbert's injury and he has standing to bring this lawsuit.

### b. VFOIA Does Not Burden a Fundamental Right Within the Meaning of the Privileges and Immunities Clause

The Privileges and Immunities Clause states "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, cl. 1. The purpose of the Clause is "to outlaw classifications based on the fact of non-citizenship unless there is something to indicate that non-citizens constitute a peculiar source of the evil at which the statute is aimed." Toomer v. Witsell, 334 U.S. 385, 398 (1948). In other words, the purpose is "to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." Id. at 395. The Clause does not, however, "preclude discrimination against citizens of other States where there is a 'substantial reason' for the difference in treatment." United Bldg. & Constr. Trades Council v. Camden, 465 U.S. 208, 222 (1984). In determining whether a state has violated the Privileges and Immunities Clause, a court must consider whether (1) the state policy burdens a right protected by the Privileges and Immunities Clause; (2) the state has a substantial reason for discriminating against noncitizens; and (3) the discrimination against noncitizens bears a substantial relationship to the state's objective. Supreme Court of New Hampshire v. Piper, 470 U.S. 274, 284 (1985); Camden, 465 U.S. at 218; Toomer, 334 U.S. at 396.

The Privileges and Immunities Clause protects fundamental rights. See Parnell v. Supreme Court of Appeals, 110 F.3d 1077, 1080 (4th Cir. 1997). A right is fundamental if it is "sufficiently

basic to the livelihood of the Nation." Baldwin v. Fish & Game Comm'n of Mon., 436 U.S. 371, 388 (1978). The Supreme Court of the United States has held that certain rights are fundamental, including the rights to: (1) practice a trade or profession, Toomer, 334 U.S. at 403; (2) access courts, Canadian N. Ry. Co. v. Eggen, 252 U.S. 553, 562 (1920); (3) transfer property, Blake v. McClung, 172 U.S. 239, 251-52 (1898); and (4) obtain medical services, Doe v. Bolton, 410 U.S. 179, 200 (1973). States can, however, limit to its own residents certain privileges such as the rights to vote and hold elective office. Piper, 470 U.S. at 282 n. 13.

1. *VFOIA Does Not Interfere with Hurlbert's Right to Pursue His Common Calling*

Plaintiffs assert that VFOIA's citizens-only provision interferes with Hurlbert's right to pursue a common calling because it limits his ability to earn a living by operating a national records retrieval service. Because accessing information is an integral component of Hurlbert's trade, he alleges that the core of his business is adversely affected by the citizens-only provision and, consequently, he cannot practice his common calling in Virginia.

Little argues that Hurlbert's business is not a common calling. Hurlbert is in the business of requesting public records on behalf of clients and acting as a plaintiff for those clients when records are withheld. Little argues that this means Hurlbert is essentially a records conduit and shell plaintiff, neither of which qualifies as a common calling. Should the Court determine that Hurlbert's business qualifies a common calling, Little asserts that VFOIA's distinguishing between citizens and noncitizens does not constitute discrimination regarding a common calling, as VFOIA's impact on business is indirect and incidental.

It is well-settled that the right to pursue a common calling is fundamental: "[T]he pursuit of a common calling is one of the most fundamental of those privileges protected by the [Privileges

8

and Immunities] Clause." United Bldg. & Constr. Trades Council v. Camden, 465 U.S. 208, 219 (1984). The Court finds that Hurlbert does engage in a common calling within the meaning of the Privileges and Immunities Clause, but that VFOIA's citizens-only provision does not impermissibly violate the right to pursue that common calling. Hurlbert makes a living by requesting records on behalf of clients. It is undisputed that his clients pay him to request records from state governments and that his job includes removing barriers to records. This type of work constitutes a common calling. Denying Hurlbert access to public records does not, however, interfere with his common calling. VFOIA's distinction between citizens and noncitizens is not a regulation of business and does not constitute discrimination pertaining to a common calling. The statute's effect on Hurlbert's ability to practice his common calling is merely incidental. Accordingly, VFOIA's citizens-only provision does not impermissibly interfere with Hurlbert's fundamental right to pursue a common calling and does not violate the Privileges and Immunities Clause.

2. *The Right to Access Information is Not a Fundamental Right*

Plaintiffs assert that the right to access public documents is fundamental and that VFOIA burdens this right. Plaintiffs argue that the fact that all fifty states and the federal government have open government or sunshine laws indicates that the right to access public information is a fundamental right.

Plaintiffs compare the instant case to Lee v. Minner, 458 F.3d 194 (3d Cir. 2006), which held that access to public records for certain purposes is a right protected by the Privileges and Immunities Clause. The plaintiff in Lee was a New York citizen who challenged the citizens-only provision of Delaware's Freedom of Information Act after he was denied access to records pertaining to Delaware's joining a nationwide settlement with Household International, Inc. Id. at 195. The Third Circuit affirmed the district court's ruling that the citizens-only provision violated

the Privileges and Immunities Clause because there was "no nexus between the State's purported objective and its practice of prohibiting noncitizens from obtaining public records." Id. at 201.

Defendants distinguish Lee by arguing that the plaintiff in Lee requested documents for the purpose of writing about "matters of both national political and economic importance." Id. at 196 (internal quotation marks omitted). Defendants maintain that Plaintiffs in the instant case are not engaging in matters of national political and economic importance, but, instead, are attempting to settle personal scores with the state. Defendants also argue that Lee was wrongly decided, as the Privileges and Immunities Clause was not enacted to protect the right to engage in the political process with regard to matters of national political and economic importance. Instead, Defendants believe the Clause was designed to ensure that noncitizens could buy and sell goods and services, practice a trade, and obtain legal redress on the same terms as citizens.

Little argues that the right to access information it is not fundamental within the meaning of the Privileges and Immunities Clause because it is not "sufficiently basic to the livelihood of the Nation. . . ." Baldwin v. Fish & Game Comm'n of Mon., 436 U.S. 371, 388 (1978). Little argues that the relative youth of freedom of information statutes undermines the notion that they are so "basic to the livelihood of the Nation," id., that they should trigger protection under the Privileges and Immunities Clause.

The State Defendant argues that the Privileges and Immunities Clause does not protect a sweeping right of access to information. The State Defendant also argues that the relatively recent enactment of VFOIA and the federal FOIA undermine the notion that they are so "basic to the livelihood of the Nation," that they should trigger the protections of the Privileges and Immunities Clause. Baldwin, 436 U.S. at 383. Further, the nation as a whole would not be undermined if states limited FOIA disclosures to residents. Finally, the State Defendant argues that McBurney has not

actually been denied access to information on the basis of his citizenship, as there are many other ways to obtain the desired documents.

The Court agrees with Defendants that the right to access information is not fundamental within the meaning of the Privileges and Immunities Clause. The Clause protects "[t]hose privileges and immunities which are, in their nature, fundamental; which belong, of right, to the citizens of all free governments; and which have, at all times, been enjoyed by the citizens of the several states which compose this Union, from the time of their becoming free, independent, and sovereign." Corfield v. Coryell, 6 F. Cas. 546, 551 (C.C.E.D. Pa. 1823). Because freedom of information statutes did not come into existence until the middle of the twentieth century,[4] it is clear that the right to information has not "[a]t all times, been enjoyed by the citizens of the several states. . . ." Id. Accordingly, it is unlikely that the drafters of the Constitution contemplated the right to access information, and the Court finds that such a right is not fundamental.

The Court distinguishes the instant case from the Lee, which held that Delaware's FOIA violated the Privileges and Immunities Clause because it restricted "noncitizens' rights to access, inspect, and copy public documents." Lee v. Minner, 458 F.3d 194, 195 (3d Cir. 2006). Plaintiffs in the instant case are not attempting to engage in the political process with respect to matters of national political and economic importance, which is the specific right at issue in Lee. Instead, Plaintiffs in the instant case seek to have declared fundamental a broad right to access information. Unlike the plaintiff in Lee, a journalist who sought information in an attempt to write about matters of national importance, Plaintiffs in the instant case seek information for their personal benefit or for the benefit of a limited group of clients. Thus, matters of national political and economic importance are not at stake and Plaintiffs are not attempting to engage in the political process.

---

[4] Virginia adopted its Freedom of Information Act in 1968. 1968 Va. Acts c. 479. The federal government enacted its statute two years earlier, in 1966. Freedom of Information Act, Pub. L. No. 89-554, 80 Stat. 383.

11

Accordingly, the right at issue in Lee is not implicated in the instant case.

3. *The Right to Access Courts is Not Implicated*

Plaintiffs believe VFOIA burdens their right of equal access to courts because the citizens-only provision limits noncitizens' ability to discover when and where a legal wrong occurred.

The State Defendant argues that McBurney has not been denied access to any court in Virginia, as he has not filed a lawsuit. The State Defendant further argues that VFOIA's citizens-only provision does not prevent McBurney from gaining meaningful access to courts because, if McBurney were to file a lawsuit in Virginia, he would be treated the same as a citizen litigant.

The right to access courts is protected under the Privileges and Immunities Clause. Canadian N. Ry. Co. v. Eggen, 252 U.S. 553, 562 (1920). The Court finds, however, that McBurney's right to access courts is not implicated in this case. To the extent McBurney might need documents to prove DCSE mishandled his child support application, they would be available to him during the discovery phase of that litigation. Consequently, a lawsuit initiated by McBurney would not be prejudiced by VFOIA's citizens-only provision. Furthermore, the Supreme Court has held that the Constitution simply requires that a noncitizen be "given access to the courts of the State upon terms which in themselves are reasonable and adequate for the enforcing of any rights" the noncitizen has, but the rights need not "be technically and precisely the same in extent as those accorded to resident citizens." Id. Thus, even if a citizen could obtain documents to help decide whether he should file a lawsuit, the Constitution does not require that noncitizens be given the exact same right.

4. *The Rights to Advocate for One's Own Interest and Pursue Economic Interests Are Not Fundamental Rights*

Plaintiffs argue that VFOIA burdens the rights to advocate for one's own interest and pursue economic interests, both of which Plaintiffs maintain are fundamental. Plaintiffs first argue

12

that McBurney's ability to advocate for his interests is affected because VFOIA limits his ability to take part in the dialogue about child support practices that affect his life and income. Without access to DCSE records, Plaintiffs argue, McBurney cannot advocate for himself as effectively as a Virginia citizen could. Plaintiffs also argue that VFOIA burdens their abilities to pursue economic interests on equal footing with Virginia residents. They argue that McBurney has been charged the equivalent of a nonresident tax for access to government documents essential to his ability to obtain compensation for DCSE's failure to properly handle his child support claim. Plaintiffs' justification is that the citizens-only clause forces McBurney to abandon his attempt to obtain information or incur extra costs to obtain information available to Virginia citizens. Plaintiffs argue that Hurlbert's ability to pursue economic interests is limited because he is unable to engage in business in Virginia.

With respect to the right to advocate for one's interests, the State Defendant argues that McBurney is free to advocate as much as he pleases, but an unlimited right of "advocacy-facilitation" does not exist. Thus, McBurney does not have a right to have the Commonwealth facilitate advocacy through compelled disclosure. The State Defendant argues that, even if there is a right to engage the political process, it does not follow that Virginia must make advocacy more effective by having State agents locate and forward records to noncitizens.

The State Defendant next argues that no court has ever held that the right to pursue a broad, undefined economic interest is fundamental. Further, the State Defendant argues, McBurney suffered no deprivation of an economic interest as a result of the denial of his VFOIA requests. The State Defendant asserts that the citizens-only provision does not hamper McBurney's ability to pursue economic interests and the fact that Virginia does not supply him with information to the same degree it supplies such information to citizens does not infringe on any economic interest. Accordingly, the State Defendant urges the Court to reject the argument that gathering information

to determine whether one should pursue an undefined economic interest is fundamental under the Privileges and Immunities Clause.

The Court finds that the rights to advocate for one's interest and pursue economic interests are not fundamental within the meaning of the Privileges and Immunities Clause. The Supreme Court has held "[i]t is '[only] with respect to those 'privileges' and 'immunities' bearing on the vitality of the Nation as a single entity' that a State must accord residents and nonresidents equal treatment." Supreme Court of New Hampshire v. Piper, 470 U.S. 274, 279 (1985). Plaintiffs have not cited, and this Court has not found, any authority indicating that broad rights to advocate for oneself and pursue economic interests are vital to the Nation as a single entity. Accordingly, VFOIA's citizens-only provision does not violate the Privileges and Immunities Clause by denying Plaintiffs the ability to advocate for their own interests or pursue general economic interests on the same terms as Virginia citizens.

*5. Substantial Justification for Discrimination Against Noncitizens*

The Privileges and Immunities Clause "[d]oes not preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it." Toomer v. Witsell, 334 U.S. 385, 396 (1948). Accordingly, a state may discriminate against nonresidents if the state has valid reasons for the discrimination and the discrimination has a close relationship with the state's objectives. Id.

Defendants argue that, even if VFOIA's citizens-only provision discriminates against a fundamental privilege, the restriction is permissible because it is closely related to a substantial state interest. Defendants point out that VFOIA's goal is to keep the public informed about the government's actions so that the citizenry can hold elected officials accountable. See Va. Code Ann. § 2.2-3700(B). Providing noncitizens access to public records does not help educate Virginians about

14

their government. Further, the close connection between Virginia government and Virginia citizens, and the fact that Virginia citizens bear the burden of paying taxes that support government and the consequences of government action, justify limiting FOIA disclosures to citizens. Finally, Defendants argue that Virginia has a compelling interest in providing government records to citizens in a timely, efficient manner, and responding to out-of-state VFOIA requests would frustrate these interests by diverting time and resources that would otherwise be available for in-state requests.

Plaintiffs maintain that Virginia does not have a substantial state interest in preventing noncitizens from making VFOIA requests and that VFOIA discriminates against noncitizens solely because they are noncitizens. Plaintiffs argue that restricting access to public records does not help Virginians hold elected officials accountable or prevent government secrecy. To the contrary, allowing more people to access public records leads to more accountability and less secrecy. Plaintiffs also argue that Defendants' attempt to characterize VFOIA's administrative costs as unique to noncitizens should fail because Virginia agencies can recoup the costs of responding to VFOIA requests. Further, prohibiting noncitizens from obtaining documents is not closely tailored to the goal of reducing administrative costs, as all VFOIA requests have administrative costs. For these reasons, Plaintiffs argue Defendants have not demonstrated that there is a substantial reason for VFOIA's citizens-only provision that bears a substantial relationship to the Virginia's objectives.

A court that finds a fundamental right has been violated must then determine if the state has a substantial reason for discriminating against noncitizens and whether the discrimination bears a substantial relationship to the state's objectives. Because this Court finds that VFOIA's citizens-only provision does not violate any fundamental rights, the Court does not reach the issues of whether Virginia has a substantial reason for discriminating against noncitizens with respect to requesting public records or whether the discrimination bears a substantial relationship to the state's objectives.

c. VFOIA Does Not Violate the Dormant Commerce Clause

When engaging in a dormant Commerce Clause analysis, courts must ask if a law discriminates against interstate commerce. Dep't of Revenue v. Davis, 553 U.S. 328, 338 (2008) (citing Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of Or., 511 U.S. 93, 99 (1994)). "Discrimination" in this context means "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." Or. Waste Sys., 511 U.S. at 99. Discriminatory restrictions on commerce are "virtually per se invalid." Id. Nondiscriminatory laws that have incidental effects on interstate commerce, however, are valid "unless 'the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'" Id. (quoting Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970)).

Plaintiffs argue that VFOIA's citizens-only provision violates the dormant Commerce Clause because it facially discriminates against interstate commerce and does not advance a legitimate local concern that cannot be advanced in a nondiscriminatory way. See Granholm v. Heald, 544 U.S. 460, 492-93 (2005) ("Our Commerce Clause cases demand more than mere speculation to support discrimination against out-of-state goods. . . . The Court has upheld state regulations that discriminate against interstate commerce only after finding, based on concrete record evidence, that a State's nondiscriminatory alternatives will prove unworkable."). Plaintiffs maintain that Virginia's interest in keeping citizens informed about government does not justify barring noncitizens from accessing public records.

Plaintiffs next argue that VFOIA's citizens-only provision erects barriers to interstate commerce and, consequently, is "virtually per se invalid." See Envtl. Tech. Council v. Sierra Club, 98 F.3d 774, 785 (4th Cir. 1996) (holding that a facially discriminatory statute is "virtually per se" invalid). Plaintiffs argue that VFOIA's citizens-only provision facially discriminates against interstate

16

commerce because it gives Virginia citizens access to public records while barring access for noncitizens. Thus, VFOIA's terms give in-state businesses similar to Hurlbert's an advantage over Hurlbert's out-of-state business. Because of this, Plaintiffs argue that VFOIA is "virtually per se invalid" and can only stand if Defendants demonstrate that the law advances a legitimate, otherwise unattainable local objective. Plaintiffs maintain that Defendants have not met this burden.

Defendants argue that government services are not commerce and, consequently, are not susceptible to scrutiny under the dormant Commerce Clause. See Davis, 553 U.S. at 341 (holding that a state performing a government function "is not susceptible to standard dormant Commerce Clause scrutiny...."). Further, Defendants argue, a government may legitimately limit the services it provides to residents. Because VFOIA does not regulate commercial activity and there are no commercial interests favored by the citizens-only provision, Defendants believe the dormant Commerce Clause is not implicated.

Defendants also argue that VFOIA has nothing to do with the economic protectionism the dormant Commerce Clause was designed to protect against. See New Energy Co. of Ind. v. Limbach, 486 U.S. 269, 273 (1988). Defendants maintain that restricting government documents to citizens so that they may be informed about their government's activities does not constitute economic protectionism. That VFOIA may have some incidental effect on a person who practices a trade outside of Virginia does not change the Commerce Clause analysis.

In determining whether a statute violates the dormant Commerce Clause, "[t]he crucial inquiry ... must be directed to determining whether [the challenged statute] is basically a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental. Philadelphia v. New Jersey, 437 U.S. 617, 624 (1978). The Court finds that VFOIA's citizens-only provision does not violate the

dormant Commerce Clause because VFOIA does not implicate principles of economic protectionism. The statute's purpose is not to protect in-state business, but, instead, is to hold government officials accountable and prevent secrecy in government. See Va. Code Ann. § 2.2-3700(B) ("[b]y enacting this chapter, the General Assembly ensures the people of the Commonwealth ready access to public records in the custody of a public body or its officers and employees. . . . The affairs of government are not intended to be conducted in an atmosphere of secrecy since at all times the public is to be the beneficiary of any action taken at any level of government."). While the law may have some incidental impact on out-of-state business, the goal is not to favor Virginia business over non-Virginia business. Accordingly, VFOIA does not violate the dormant Commerce Clause.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS the State Defendant's Motion for Summary Judgment and Little's Cross-Motion for Summary Judgment and DENIES Plaintiffs' Cross Motion for Summary Judgment.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

/s/
James R. Spencer
Chief United States District Judge

ENTERED this 21st day of January 2011